# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| BERNICE PATTERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 9:20-cv-1445-DCN |
| vs. ) | |
| ) | **ORDER** |
| WAL-MART STORES EAST LP, ) | |
| WAL-MART, INC. STORE #2832, and JARED ) | |
| WORLEY ) | |
| Defendants. ) | |
| ) | |

The following matter is before the court on plaintiff Bernice Patterson's ("Patterson") motion to remand, ECF No. 7. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This personal injury case arises from an accident that occurred in a Wal-Mart store located in Hardeeville, South Carolina ("the Hardeeville Wal-Mart"). Patterson alleges that on July 20, 2018, while a patron, she tripped on a floormat at the Hardeeville Wal-Mart and fell to the ground, causing serious injuries to her back and lower body. On March 11, 2020, Patterson brought this action in the Jasper County Court of Common Pleas against defendants Wal-Mart Stores East LP ("Wal-Mart"), Wal-Mart, Inc. Store #2832[1], and Jared Worley ("Worley"), the store manager of the Hardeeville Wal-Mart at

---

[1] In their notice of removal, Wal-Mart states that "Wal-Mart Stores #2832 is not a corporate entity and should be disregarded." ECF No. 1 at 2. Because it is without subject matter jurisdiction, the court leaves to the Jasper County Court of Common Pleas the issue of whether Wal-Mart, Inc. Store #2832 is a proper defendant.

1

the time of the alleged accident. ECF No. 1-1. On April 15, 2020, Wal-Mart removed the lawsuit to this court on the basis of diversity jurisdiction. ECF No. 1.

On April 16, 2020, Worley filed a motion to dismiss for improper service of process.[2] ECF No. 5. Patterson did not respond to the motion directly but instead filed a motion to remand on May 6, 2020. ECF No. 7. Wal-Mart responded to the motion to remand on May 20, 2020. ECF No. 8. Patterson has not filed a reply, and the time to do so has now expired. The court held a telephonic hearing on the matter on June 3, 2020. As such, the matter is now ripe for the court's review.

## II.   STANDARD

Federal courts are of constitutionally limited jurisdiction. "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of retained state court jurisdiction, Baxley v. Advance Auto Parts, Inc., 2011 WL 586072 at *1 (D.S.C. Feb. 9, 2011) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).

Generally, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such

---

[2] At the hearing on the motion, counsel for Worley conceded that service on Worley was properly effected and informed the court that grounds for the motion to dismiss are no longer supported. Therefore, the court found the motion to dismiss moot.

action is pending. 28 U.S.C. § 1441(a). Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizen of different states, see 28 U.S.C. § 1332.

### III.  DISCUSSION

Wal-Mart removed this action on the basis of diversity jurisdiction because Wal-Mart is a citizen of Arkansas and Delaware and Patterson is a citizen of South Carolina. Walmart concedes that diversity jurisdiction does not exist in light of the traditional complete diversity requirement because Worley, Wal-Mart's co-defendant, is a citizen of South Carolina, the same state as Patterson.[3] Nevertheless, Wal-Mart argues that the court should ignore Worley's citizenship under the "fraudulent joinder" doctrine and assert jurisdiction over the matter because Worley is a sham defendant who was included in this lawsuit for the sole purpose of destroying diversity.

In her motion, Patterson asserts two grounds for remand. First, Patterson argues that Wal-Mart's notice of removal was procedurally defective, necessitating remand, because Wal-Mart failed to sufficiently allege the consent of Worley, its co-defendant. Second, Wal-Mart argues that the court does not have diversity jurisdiction over the subject matter of this action because Worley and Patterson are both citizens of South Carolina. Patterson explains that the doctrine of fraudulent joinder is inapplicable because Worley is a legitimate defendant to this action against whom Patterson can establish an independent cause of action. The court addresses Patterson's grounds for

---

[3] The Supreme Court has long interpreted the language of § 1332 to impose a requirement of complete diversity, that is, a requirement that all plaintiffs be diverse in citizenship from all defendants. See Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2005).

remand in reverse order, since resolution of the latter in Patterson's favor would negate the court's need to reach the former.

Wal-Mart argues that the court should disregard Worley as a sham defendant under the fraudulent joinder doctrine because there is no possibility that Patterson could establish a cause of action against Worley. The court disagrees. To show that a plaintiff's joinder of a defendant is fraudulent, the removing party "must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)) (internal quotation marks omitted). Because Wal-Mart has not alleged any outright fraud in Patterson's pleadings, the court focuses its inquiry solely on whether Patterson would be able to establish a cause of action against Worley in South Carolina.

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Id. "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Id. (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992)). In determining whether an attempted joinder is fraudulent, "the court is not bound by the allegations of the pleadings but may instead consider the entire record and determine the basis of joinder by any means available." Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (quoting AIDS Counseling & Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990)) (internal citations and quotation marks omitted). To determine whether

Worley is fraudulently joined, then, the court must consider whether there is a possibility that Patterson can establish a cause of action against Worley under South Carolina law, resolving all doubts in both fact and unsettled law in favor of Patterson.

Patterson's claim against Worley is one rooted in negligence. To establish a negligence claim in South Carolina, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached this duty, (3) the breach proximately caused the plaintiff's injuries, and (4) the plaintiff suffered an injury. Dorrell v. S.C. Dep't of Transp., 605 S.E.2d 12, 15 (S.C. 2004). "A property owner owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for injuries resulting from any breach of such duty." Sides v. Greenville Hosp. Sys., 607 S.E.2d 362, 364 (S.C. Ct. App. 2004). In 1954, the South Carolina Supreme Court first recognized that the duty an owner of land owes to invitees may also extend to one who oversees, but does not own, property. Richards v. Great Atl. & Pac. Tea Co., 83 S.E.2d 917, 920 (S.C. 1954). Although the court in Richards definitely held that a store manager could be held liable for injuries caused by dangerous conditions in the store, the court did little to establish a legal framework for determining the contours of a manager's duty to patrons of his or her store.

While the body of law remains murky in South Carolina, subsequent courts have provided useful insight. So-called "shopkeeper liability" in South Carolina "is founded upon the duty of care a possessor of land owes to an invitee." Wintersteen v. Food Lion, Inc., 542 S.E.2d 728, 730 (S.C. 2001). The South Carolina Supreme Court has stated that while "a merchant is not an insurer of the safety of his customers," "he owes a duty to keep aisles and passageways in a reasonably safe condition." Sides, 607 S.E.2d at 364

5

(citing Felder v. K–Mart, 377 S.E.2d 332 (1989) and Moore v. Levitre, 365 S.E.2d 730 (S.C. 1988)) (internal quotation marks omitted). In considering whether South Carolina law imposes a duty on store managers to maintain a safe premises, this district has posited that the touchstone of the inquiry is the extent of the manager's control over the premises. Benjamin v. Wal-Mart Stores, Inc., 413 F. Supp. 2d 652, 655–56 (D.S.C. 2006) (citing Dunbar v. Charleston & W. C. Ry. Co., 44 S.E.2d 314, 317 (S.C. 1947) (finding that "liability depends upon control, rather than ownership, of the premises"); see also Cook v. Lowe's Home Centers, Inc., 2006 WL 3098773, at *4 (D.S.C. Oct. 30, 2006).

This issue is far from one of first impression in this district.[4] In fact, this court has considered the legitimacy of a plaintiff's joinder of Worley in a different lawsuit against Wal-Mart based on a different accident that occurred at the same Hardeeville Wal-mart. See Hardrick v. Wal-Mart Stores Inc., 2018 WL 3867805 (D.S.C. Aug. 15, 2018). Both parties seize upon the abundant case law from this court. For example, Patterson urges this court to rely on two of its previous orders, Hardrick, 2018 WL 3867805, and Mobley v. Wal-Mart Stores, Inc., 2010 WL 503101, at *3 (D.S.C. Feb. 8, 2010), each of which found that a Wal-Mart store manager was not fraudulently joined in a similar negligence action. Wal-Mart, conversely, points the court to its decision in Benjamin, which found that a Wal-Mart department manager was a sham defendant in a negligence action against Wal-Mart. 413 F. Supp. 2d at 655. Because this case more closely aligns with Hardrick and Mobley, the court finds that Worley is not fraudulently joined and grants Patterson's motion to remand.

---

[4] As the sagacious Yogi Berra would say, "it's déjà vu all over again."

In <u>Benjamin</u>, the plaintiff brought suit against Wal-Mart after she slipped on a loose board in the pet department of the store. The plaintiff joined as defendants the manager of the pet department and another employee who was allegedly in the same aisle as the plaintiff when the accident occurred. 413 F. Supp. 2d at 654. The court in <u>Benjamin</u> found that the pet department manager had been fraudulently joined because the plaintiff failed to allege any facts suggesting that the department manager "exerted a level of control over the premises unusual for an employee or department manager." <u>Id.</u> at 656. The court found that "[o]ne does not have an affirmative duty to maintain safe premises of a store merely by virtue of being an employee, absent some evidence of more substantial level of control over the business." <u>Id.</u> Further, the court noted that it would be impermissible to interpret South Carolina negligence law in a way that would "expose lower management and hourly employees to burdensome personal liability every time an individual is injured within a store." <u>Id.</u> In short, the court in <u>Benjamin</u> determined that a department manager did not have sufficient control over his employer's store to be held liable for accidents occurring within his department of the store under South Carolina law.

In <u>Mobley</u>, the plaintiff filed a negligence action against Wal-Mart after she tripped in the parking lot, fell, and sustained injuries. 2010 WL 503101, at *1. The plaintiff joined the store manager as a defendant and argued that the defendant-manager breached a duty to warn the plaintiff of the parking lot's dangerous condition. There, like here, Wal-Mart urged the court to rely on <u>Benjamin</u> for the proposition that the defendant-manager did not exercise sufficient control over the store for South Carolina law to impose upon her a duty to warn customers of dangerous conditions. The court

7

disagreed with Wal-Mart, finding that because the defendant-manager was the manager of the entire store rather than a "department manager within the store, [or] a lower-level employee" and had a "high level of control over the store," there was at least a possibility under South Carolina law that "she had the authority to search for and discover, or warn customers against, defects in the Wal-Mart store parking lot." Id. at *5. Therefore, the court found that there was a possibility that, with the benefit of later discovery, the plaintiff could establish a claim against the defendant-manager. Thus, the Mobley court found that the defendant-manager was a legitimate defendant who destroyed the court's diversity jurisdiction and remanded the case to state court.

The court confronted another iteration of the same question in Hardrick, 2018 WL 3867805. There, the plaintiff sued Wal-Mart after an allegedly defective shelf fell and injured him. The plaintiff joined as a defendant the manager of the Wal-Mart store.[5] In a familiar refrain, Wal-Mart again argued that there was no possibility that the plaintiff could establish a cause of action against the defendant-manager based on Benjamin. This court disagreed:

> [] Hardrick has brought a negligence cause of action against [the defendant-manager] for his failure to warn Hardrick of the shelf's dangers and in continuing to use the dangerous item in his store. He has clearly alleged that, [the defendant-manager] exerted a high level of control over the premises. It is conceivable that Hardrick could demonstrate, after adequate discovery, that [the defendant-manager] did exercise "such control of the premises so as to impose a duty to reasonably inspect the premises" and that Worley did in fact owe a legal duty to people in the store to ensure that there were no hazards. It is also possible that Hardrick might prove that this

---

[5] The defendant-manager in Hardrick was Worley, the same manager-defendant in this case. The fact that Hardick and the instant case involve the same manager plays no role in the court's analysis. The court considers whether Worley was fraudulently joined on the facts before it in this case and considers Hardrick only for its legal significance. To not confuse the issue, the court refers to Worley in this case as Worley and refers to him generically as the defendant-manager in the context of Hardrick.

> [shelving] was a known hazard that should have been repaired or replaced by [the defendant-manager]. Considering the high standard for fraudulent joinder, and resolving all questions of law and fact in Hardrick's favor, the court finds that [the defendant-manager] was not fraudulently joined.

Id. at *3. In short, the court in Mobley and Hardrick distinguished those cases from Benjamin because the defendant-managers in Mobley and Hardrick exercised control over the entire store, whereas the defendant-manager in Benjamin was a "lower-level employee" with control over only the specific department to which he was assigned. The court is not alone in its reliance on this distinction. See, e.g., Cook, 2006 WL 3098773 ("This Court finds Benjamin distinguishable in that the case at bar involves the store manager, not the manager of one department and another employee who did not occupy a managerial position.").

The facts here more closely align with Mobley and Hardrick than with Benjamin. Like the defendant-managers in Mobley and Hardrick, Worley was the manager of the entire Hardeeville Wal-Mart store. He was not, like the defendant-manager in Benjamin, a "lower-level employee" or department manager. The court's analysis in Mobley and Hardrick rings true with equal force when applied to this case. Patterson has alleged that Worley had significant control over the Hardeeville Wal-Mart, and the court has no reason to believe that Patterson would be unable to make such a showing after having the benefit of discovery. If Patterson were to show that Worley exercised sufficient control over the Hardeeville Wal-Mart, a South Carolina court could find that the extent of Worley's control over the store imposed upon him a duty to warn Patterson of or make safe dangers within the store. For example, if discovery revealed that Worley knew of the floor mat's allegedly dangerous condition and nevertheless failed to remedy or warn of the danger, Patterson would likely be able to establish a claim against Worley under

9

South Carolina law.  The court here, like it did in <u>Mobley</u> and <u>Hardrick</u>, must resolve the doubts of unsettled South Carolina law in favor of Patterson.  As such, the court cannot foreclose the possibility that Patterson would be able to establish a cause of action against Worley.

Wal-Mart attempts to distinguish the facts of this case from those in <u>Mobley</u> and <u>Hardrick</u> by noting that, unlike the defendant-managers in those cases, Worley could not have warned Patterson of the allegedly dangerous condition of the floor mat "because he was not on the premises at the time of the incident."  ECF No. 8 at 5.  In support of its assertion, Wal-Mart cites to a declaration by Worley in which he states:

> On the date Ms. Patterson claimed she tripped, I was the Store Manager of [the Hardeeville Wal-Mart], but to the best of my memory, I was not in the store at the time of the alleged incident, which is about 5:45 p.m.  During July 2018, it was my practice to leave the store daily no later than 5:00 p.m.

ECF No. 8-1, Worley Aff. ¶ 4.  Based on this testimony, Wal-Mart argues that Worley "could not have inspected the store or warned [Patterson] of any potential danger."  ECF No. 8 at 5.  The court disagrees for two reasons.

First, Worley states in his declaration that he was not present at the Hardeeville Wal-Mart at the time of the accident "to the best of [his] memory", based on his habit of leaving the store forty-five minutes before the time at which the accident occurred.  This testimony falls well short of conclusively establishing that Worley was absent from the Hardeeville Wal-Mart when Patterson was injured.  Given that Patterson has not had the benefit of discovery, it would be inappropriate for the court to accept Worley's absence from the store as true without allowing Patterson the opportunity to make a showing to the contrary, especially considering that the evidence presented by Wal-Mart is far from conclusive.  Indeed, the lenient standard imposed upon the plaintiff to show that a

defendant has not been fraudulently joined contemplates that the plaintiff does not have the benefit of evidence gleaned from discovery. See Hartley, 187 F.3d at 424 ("This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

Moreover, Worley's absence in the store at the moment the accident occurred, even if the court were to accept that fact as conclusively true, does not entirely preclude the possibility that he had a duty to Patterson to warn or make safe a potentially dangerous condition in the store under South Carolina law. Discussed above, a manager's legal duty to the patrons of his store "is founded upon the duty of care a possessor of land owes to an invitee." Wintersteen, 542 S.E.2d at 730. In South Carolina, a possessor of land owes a duty to invitees to warn of or make safe dangerous conditions on the land that are known to the possessor and not openly or obviously dangerous. Callander v. Charleston Doughnut Corp., 406 S.E.2d 361, 362 (S.C. 1991). South Carolina premises liability law imposes no requirement that a possessor of land be physically present on the premises at the time an invitee is injured for the possessor to be held liable for his or her invitee's injuries.

The absence of such a requirement makes good sense. If, for example, Worley knew the floor mat in question had a tendency to slide and he witnessed multiple customers lose balance while walking over the mat prior to Patterson's accident, a South Carolina court would likely find that Worley had a duty to customers to make safe or warn of the mat's dangerous condition. The fact that Worley left the Wal-Mart forty-five minutes prior to the accident occurring would not absolve him of this duty to patrons in the store. Of course, Worley could have warned Patterson of the mat's allegedly

dangerous condition or made the dangerous condition safe without being physically present at the store. Worley could have erected a warning sign noting the condition of the floor mat or could have replaced the allegedly dangerous floor mat before Patterson arrived at the store. Wal-Mart concedes in its response that "[i]f a repair was needed, Mr. Worley or another manager was responsible for notifying Walmart of the needed repair and requesting maintenance . . . ." ECF No. 8 at 8. The court cannot say definitely that South Carolina law would not impose a duty upon Worley to do just that if he knew of a dangerous condition in the store. Thus, Worley's absence from the Hardeeville Wal-Mart, even if conclusively established, does not eliminate the possibility that Patterson could establish a cause of action against him.[6]

The modesty of a plaintiff's burden to defeat a claim of fraudulent joinder is not arbitrary. A removing defendant wielding the doctrine asks the court to dismiss a plaintiff's claim before the plaintiff has had the benefit of discovery. It is a basic concept of federal jurisprudence that a court should be wary of extinguishing a claim before affording its proponent the opportunity to prove that claim's merit. At the same time, the court must be equally cognizant that, in accepting a theory of fraudulent joinder, it asserts jurisdiction over a matter that would not otherwise be within its constitutional reach. As

---

[6] In support of their argument that Worley's absence from the store is dispositive here, Wal-Mart cites to yet another case from this court that confronted the issue of fraudulent joinder with respect to Wal-Mart, Lee v. Walmart Store #795, 2017 WL 4910689, at *1 (D.S.C. Oct. 31, 2017). While it is true that the defendant-manager in that case was not present at the time of the injury, the court's acceptance of Wal-Mart's fraudulent joinder argument was based on the fact that the defendant-manager was a "lower level employee" and exercised control over a mere department of the store like the defendant-manager in Benjamin. See Lee, 2017 WL 4910689, at *1 ("Here, like the department manager in Benjamin, it is clear that at the time of the incident, [the defendant manager] was employed as the manager of the grocery department and not as a store manager."). As discussed above, that is not the case here with respect to Worley.

such, the doctrine implicates another fundamental concept of federal law—that a court must strictly police its jurisdiction over a case's subject matter and, where that jurisdiction is in doubt, must remand the action to state court.  Mindful of a plaintiff's inopportunity to gather evidence and the constitutional limitations on its own jurisdiction, a federal court should not lightly disregard a plaintiff's cause of action to assert jurisdiction over a matter where its jurisdiction would otherwise be lacking.

As such, a court may only employ the doctrine of fraudulent joinder after determining that the plaintiff's cause of action against the allegedly fraudulently joined defendant cannot possibly stand, even after resolving all factual and legal doubts in the plaintiff's favor.  Here, the court cannot foreclose the possibility that Patterson could establish a cause of action against Worley based on the facts before it and the uncertainty of South Carolina law on the issue.  Therefore, the court grants Patterson's motion and remands the matter to the Jasper County Court of Common Pleas.

## IV. CONCLUSION

For the foregoing reasons the court **GRANTS** the motion to remand and **REMANDS** the case to the Jasper County Court of Common Pleas.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**June 9, 2020**
**Charleston, South Carolina**